



**U.S. Department of Justice**

*United States Attorney*
*District of Maryland*
*Northern Division*

---

*Rod J. Rosenstein*
*United States Attorney*

*Mark W. Crooks*
*Assistant United States Attorney*

*36 South Charles Street*
*Fourth Floor*
*Baltimore, Maryland 21201*

*DIRECT: 410-209-4867*
*MAIN: 410-209-4800*
*FAX: 410-962-3091*
*mark.crooks@usdoj.gov*

September 25, 2011

Deborah Boardman
Office of the Federal Public Defender, District of Maryland
100 South Charles Street
Tower II, Suite 900
Baltimore, MD 21201

     Re:   *United States v. Gregory McNeil*
           <u>Criminal No.  RDB-11-202</u>

Dear Ms. Boardman:

     This letter, together with the Sealed Supplement, confirms the plea agreement which has been offered to the Defendant by the United States Attorney's Office for the District of Maryland ("this Office"). If the Defendant accepts this offer, please have him execute it in the spaces provided below. If this offer has not been accepted by October 5, 2011, it will be deemed withdrawn. The terms of the agreement are as follows:

<u>Offense of Conviction</u>

     1.    The Defendant agrees to plead guilty to Counts One and Two of the Indictment now pending against him, which charge him with armed bank robbery and the use of a firearm during the commission of a crime of violence, in violation of 18 U.S.C. §§ 2, 2113(a)(d) and (f) and 924(c)(1)(A). The Defendant admits that he is, in fact, guilty of those offenses and will so advise the Court.

<u>Elements of the Offense</u>

     2.    The elements of the offense to which the Defendant has agreed to plead guilty, and which this Office would prove if the case went to trial, are as follows:

    a.    <u>Armed Bank Robbery, 18 U.S.C. § 2113(a)(d) and (f)</u>

        i.    The Defendant intentionally took from the person, or presence of the person, money or property;

        ii.    The money or property belonged to, or was in the possession of, a federally insured bank at the time of the taking;

        iii.    The Defendant took the money or property by means of force and violence; and

        iv.    The Defendant assaulted one or more people by the use of a dangerous weapon while engaged in taking the money.

    b.    <u>Use of a Firearm In Furtherance Of a Crime of Violence, 18 U.S.C. § 924(c)</u>

        i.    The Defendant committed the crime alleged in Count One, namely, armed bank robbery, which is a crime of violence; and

        ii.    The Defendant knowingly used a firearm during and in furtherance of the commission of the armed bank robbery charged in Count One.

Penalties

3.    The maximum sentence provided by statute for the offense to which the Defendant is pleading guilty is as follows:  Count One: 25 years imprisonment, $250,000 fine and five years supervised release; Count Two: Life (mandatory minimum consecutive term of 7 years because a firearm was brandished during the robbery), $250,000 fine and five years supervised release.  In addition, the Defendant must pay $200.00 as a special assessment pursuant to 18 U.S.C. § 3013, which will be due and should be paid at or before the time of sentencing.  This Court may also order him to make restitution pursuant to 18 U.S.C. §§ 3663, 3663A, and 3664.[1]  If a fine or restitution is imposed, it shall be payable immediately, unless, pursuant to 18 U.S.C. § 3572(d), the Court orders otherwise.  The Defendant understands that if he serves a term of imprisonment, is released on supervised release, and then violates the conditions of his supervised release, his supervised release could be revoked - even on the last day of the term - and the Defendant could be returned to custody to serve another period of incarceration and a new term of supervised release.  The Defendant understands that the Bureau of Prisons has sole discretion in designating the institution at which the Defendant will serve any term of imprisonment imposed.

_____

    [1]    Pursuant to 18 U.S.C. § 3612, if the Court imposes a fine in excess of $2,500 that remains unpaid 15 days after it is imposed, the Defendant shall be charged interest on that fine, unless the Court modifies the interest payment in accordance with 18 U.S.C. § 3612(f)(3).

## Waiver of Rights

4.      The Defendant understands that by entering into this agreement, he surrenders certain rights as outlined below:

a.      If the Defendant had persisted in his plea of not guilty, he would have had the right to a speedy jury trial with the close assistance of competent counsel. That trial could be conducted by a judge, without a jury, if the Defendant, this Office, and the Court all agreed.

b.      If the Defendant elected a jury trial, the jury would be composed of twelve individuals selected from the community. Counsel and the Defendant would have the opportunity to challenge prospective jurors who demonstrated bias or who were otherwise unqualified, and would have the opportunity to strike a certain number of jurors peremptorily. All twelve jurors would have to agree unanimously before the Defendant could be found guilty of any count. The jury would be instructed that the Defendant was presumed to be innocent, and that presumption could be overcome only by proof beyond a reasonable doubt.

c.      If the Defendant went to trial, the government would have the burden of proving the Defendant guilty beyond a reasonable doubt. The Defendant would have the right to confront and cross-examine the government's witnesses. The Defendant would not have to present any defense witnesses or evidence whatsoever. If the Defendant wanted to call witnesses in his defense, however, he would have the subpoena power of the Court to compel the witnesses to attend.

d.      The Defendant would have the right to testify in his own defense if he so chose, and he would have the right to refuse to testify. If he chose not to testify, the Court could instruct the jury that they could not draw any adverse inference from his decision not to testify.

e.      If the Defendant were found guilty after a trial, he would have the right to appeal the verdict and the Court's pretrial and trial decisions on the admissibility of evidence to see if any errors were committed which would require a new trial or dismissal of the charges against him. By pleading guilty, the Defendant knowingly gives up the right to appeal the verdict and the Court's decisions.

f.      By pleading guilty, the Defendant will be giving up all of these rights, except the right, under the limited circumstances set forth in the "Waiver of Appeal" paragraph below, to appeal the sentence. By pleading guilty, the Defendant understands that he may have to answer the Court's questions both about the rights he is giving up and about the facts of his case. Any statements the Defendant makes during such a hearing would not be admissible against him during a trial except in a criminal proceeding for perjury or false statement.

g.      If the Court accepts the Defendant's plea of guilty, there will be no further trial or proceeding of any kind, and the Court will find him guilty.

h.      By pleading guilty, the Defendant will also be giving up certain valuable civil rights and may be subject to deportation or other loss of immigration status.

### Advisory Sentencing Guidelines Apply

5.      The Defendant understands that the Court will determine a sentencing guidelines range for this case (henceforth the "advisory guidelines range") pursuant to the Sentencing Reform Act of 1984 at 18 U.S.C. §§ 3551-3742 (excepting 18 U.S.C. §§ 3553(b)(1) and 3742(e)) and 28 U.S.C. §§ 991 through 998. The Defendant further understands that the Court will impose a sentence pursuant to the Sentencing Reform Act, as excised, and must take into account the advisory guidelines range in establishing a reasonable sentence.

### Factual and Advisory Guidelines Stipulation

6.      This Office and the Defendant understand, agree and stipulate to the following Statement of Facts which this Office would prove beyond a reasonable doubt, and to the following applicable sentencing guidelines factors:

a.      Statement of Facts

On Tuesday, January 25, 2011, Gregory McNeil, now age 62, entered the Wachovia Bank at 860 N. Rolling Road, Catonsville, Maryland. McNeil approached a teller, pointed a shiny revolver handgun at her face and torso, demanded "twenties, fifties and hundreds" and warned her not to give him any dye packs. As the teller was complying with the demand, McNeil continued to point the handgun in her direction, which is clearly shown on the bank surveillance tapes. Fearing for her safety and that of others in the bank, the teller complied and placed $3,945.00 of U.S. currency on the counter, which McNeil seized and placed in a black attache bag before leaving the bank. Witnesses observed that McNeil had been wearing sneakers with red soles and a winter hat with ear-flaps. Items matching these descriptions were later recovered from the McNeil's girlfriend's apartment, where McNeil was living at the time.

On Thursday, February 3, 2011, McNeil entered the M&T Bank at 7210 Ambassador Road, Woodlawn, Maryland, approached a teller, pointed a silver revolver handgun at the teller and again demanded U.S. currency in the form of twenty, fifty and one-hundred dollar bills. Bank surveillance tapes clearly depict McNeil pointing his handgun at the teller, which caused her to fear for her safety, as well as others. As before, McNeil warned the teller not to hand him any dye packs. When the teller put the money on the counter, McNeil placed the bundles of cash in a shoulder bag before leaving the bank. McNeil stole $2918.00 of U.S. currency. Witnesses observed that McNeil was wearing a black leather hat, black leather "bomber" jacket and black jeans. Items matching these descriptions were later

recovered from the same apartment where McNeil was living.

On Tuesday, February 22, 2011, McNeil robbed the same Wachovia Bank at 860 N. Rolling Road, Maryland as that described above. McNeil entered the bank, approached a teller, pointed a silver revolver handgun at her and demanded money. McNeil had approached the same teller as that whom he robbed on January 25, 2011. The teller recognized McNeil as the same man who had robbed her roughly one month prior and was extremely fearful for her personal safety. McNeil repeated a similar demand for twenty, fifty and one-hundred dollar bills and again warned "no dye packs." The teller placed $5,249.00 in U.S. currency on the counter, which McNeil grabbed and placed in a black leather bag before leaving the bank. Witnesses observed that McNeil was wearing a black leather jacket, black pants, a hat with ear flaps, sneakers with red soles, and a portfolio-style laptop bag. Items matching these descriptions and a silver revolver handgun were later recovered from the same apartment where McNeil was living. Bank surveillance tapes clearly show McNeil pointing the revolver directly at the teller, whom he frightened for the second time.

McNeil admitted to having committed all three of the robberies described herein.

Both Wachovia Bank and M&T Bank were banks, the deposits, moneys and properties of which were insured by the Federal Deposit Insurance Corporation.

     b.     <u>Guideline Stipulation</u>

The Parties agree that the Defendant is a career offender pursuant to U.S.S.G. § 4B1.1. Accordingly, allowing for a 3-level reduction for acceptance of responsibility, the Guideline Range is 262-327.

<u>Rule 11 (c) (1) (C) Plea</u>

7.     The parties stipulate and agree pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C) that a sentence of **240 to 360 months incarceration, to be served concurrently with any violation of supervised release sentence imposed** (the exact number of months to be determined by the Court) is the appropriate disposition of this case. This agreement does not affect the Court's discretion to impose any lawful term of supervised release or fine or to set any lawful conditions of probation or supervised release. In the event that the Court rejects this plea agreement, *either* party may elect to declare the agreement null and void. Should the Defendant so elect, he will be afforded the opportunity to withdraw his plea pursuant to the provisions of Federal Rule of Criminal Procedure 11(c)(5).

<u>Obligations of the United States Attorney's Office</u>

8.     At the time of sentencing, this Office will recommend a sentence within the range of

months described above in Paragraph 7, to be served concurrently with any violation of supervised release sentence imposed.  At the time of sentencing, this Office will move to dismiss any open counts against the Defendant.

9.      The parties reserve the right to bring to the Court's attention at the time of sentencing, and the Court will be entitled to consider, all relevant information concerning the Defendant's background, character and conduct, including the conduct that is the subject of the counts of the Indictment that this Office has agreed to dismiss at sentencing.

## Waiver of Appeal

10.     In exchange for the concessions made by this Office and the Defendant in this plea agreement, this Office and the Defendant waive their rights to appeal as follows:

a.      The Defendant knowingly waives his rights, pursuant to 28 U.S.C. § 1291 or otherwise, to appeal the Defendant's conviction;

b.      The Defendant and this Office knowingly waive all right, pursuant to 18 U.S.C. § 3742 or otherwise, to appeal whatever sentence is imposed (including the right to appeal any issues that relate to the establishment of the advisory guidelines range, the determination of the defendant's criminal history, the weighing of the sentencing factors, and the decision whether to impose and the calculation of any term of imprisonment, fine, order of forfeiture, order of restitution, and term or condition of supervised release), except as follows: (i) the Defendant reserves the right to appeal any combined term of imprisonment for Counts One and Two to the extent that it exceeds **360** months imprisonment, to be served concurrently with any violation of supervised release sentence imposed; (ii) and this Office reserves the right to appeal any term of imprisonment for Counts One and Two to the extent it is less than **240** months.

c.      Nothing in this agreement shall be construed to prevent the Defendant or this Office from invoking the provisions of Federal Rule of Criminal Procedure 35(a), or from appealing from any decision thereunder, should a sentence be imposed that resulted from arithmetical, technical, or other clear error.

d.      The Defendant waives any and all rights under the Freedom of Information Act relating to the investigation and prosecution of the above-captioned matter and agrees not to file any request for documents from this Office or any investigating agency.

## Obstruction or Other Violations of Law

11.     The Defendant agrees that he will not commit any offense in violation of federal, state or local law between the date of this agreement and his sentencing in this case.  In the event that the Defendant (I) engages in conduct after the date of this agreement which would justify a finding of obstruction of justice under U.S.S.G. § 3C1.1, or (ii) fails to accept personal responsibility for his

conduct by failing to acknowledge his guilt to the probation officer who prepares the Presentence Report, or (iii) commits any offense in violation of federal, state or local law, then this Office will be relieved of its obligations to the Defendant as reflected in this agreement. Specifically, this Office will be free to argue sentencing guidelines factors other than those stipulated in this agreement, and it will also be free to make sentencing recommendations other than those set out in this agreement. As with any alleged breach of this agreement, this Office will bear the burden of convincing the Court of the Defendant's obstructive or unlawful behavior and/or failure to acknowledge personal responsibility by a preponderance of the evidence. The Defendant acknowledges that he may not withdraw his guilty plea because this Office is relieved of its obligations under the agreement pursuant to this paragraph.

## Court Not a Party

12.     The Defendant expressly understands that the Court is not a party to this agreement. In the federal system, the sentence to be imposed is within the sole discretion of the Court. In particular, the Defendant understands that neither the United States Probation Office nor the Court is bound by the stipulation set forth above, and that the Court will, with the aid of the Presentence Report, determine the facts relevant to sentencing. The Defendant understands that the Court cannot rely exclusively upon the stipulation in ascertaining the factors relevant to the determination of sentence. Rather, in determining the factual basis for the sentence, the Court will consider the stipulation, together with the results of the presentence investigation, and any other relevant information. The Defendant understands that the Court is under no obligation to accept this Office's recommendations, and the Court has the power to impose a sentence up to and including the statutory maximum stated above. The Defendant understands that if the Court ascertains factors different from those contained in the stipulation set forth above, or if the Court should impose any sentence up to the maximum established by statute, the Defendant cannot, for that reason alone, withdraw his guilty plea, and will remain bound to fulfill all of his obligations under this agreement. The Defendant understands that neither the prosecutor, his counsel, nor the Court can make a binding prediction, promise, or representation as to what guidelines range or sentence the Defendant will receive. The Defendant agrees that no one has made such a binding prediction or promise.

## Entire Agreement

13.     This letter supersedes any prior understandings, promises, or conditions between this Office and the Defendant and, together with the Sealed Supplement, constitutes the complete plea agreement in this case. The Defendant acknowledges that there are no other agreements, promises, undertakings or understandings between the Defendant and this Office other than those set forth in this letter and the Sealed Supplement and none will be entered into unless in writing and signed by all parties.

If the Defendant fully accepts each and every term and condition of this agreement, please sign and have the Defendant sign the original and return it to me promptly.

Very truly yours,

Rod J. Rosenstein
United States Attorney

By: _____

Mark W. Crooks
Assistant United States Attorneys

I have read this agreement, including the Sealed Supplement, and carefully reviewed every part of it with my attorney. I understand it, and I voluntarily agree to it. Specifically, I have reviewed the Factual and Advisory Guidelines Stipulation with my attorney, and I do not wish to change any part of it. I am completely satisfied with the representation of my attorney.

9/3/2011
Date

Gregory McNeil
Gregory McNeil

I am Gregory McNeil's attorney. I have carefully reviewed every part of this agreement, including the Sealed Supplement, with him. He advises me that he understands and accepts its terms. To my knowledge, his decision to enter into this agreement is an informed and voluntary one.

10/5/11
Date

Ms. Deborah Boardman, Esquire

Revised 11/5/09                                    8